## WATSON v. WATSON.

1. An instrument of writing, in form a deed, from a husband to his wife, in words following, to wit: "Know all men by these presents that I, T. W., in consideration of the affection I bear my wife, E. C. W., at and before the sealing of these presents, have granted, bargained, and at my death, by these presents, do grant, bargain, and release unto the said E. C. W., all that tract or parcel of land known as my homestead * * together with all the kitchen and household furniture and effects, with all and singular the rights, members, * * to have and to hold, &c. All of the before mentioned property I give to my wife independent of her dower, and no enumeration or deduction is to be made against her in consideration thereof in the final distribution of my estate." Then follows a covenant of general warranty, and the conclusion with date, and last of all these words: "This paper not to be in full force until I desire to act." *Held*, that this instrument was not intended to operate as a will, but as a deed, and must be sustained as a covenant to stand seized to uses.

2. It may not now be asserted as an inflexible rule that a conveyance of chattels cannot be made to take effect after the termination of a life estate; but the personalty included in this deed not being here in contest, the court will not permit the mention of them to control the otherwise clear intention of the grantor, that the paper was not intended to operate in the nature of a will.

 3. The last sentence is too vague and indefinite to control the clear inten-
tion disclosed in other parts of this deed.

. The intention of this deed must be ascertained from the instrument
itself, and this was done by the Circuit Judge in this case.

Before WITHERSPOON, J., Edgefield, March, 1885.

This is an appeal from the following decree:

Plaintiffs contend that as defendant could take no interest in
? land under the instrument until after the death of Tillman
.tson, Sr., and as said intended disposition was revocable, the
trument must be construed as testamentary in its character. It
.ontended that as a will the paper is invalid, as it has but two
.nesses. The form of an instrument is important only so far
t is evidence of what was intended.

.s to the form. The only evidence of a testamentary charac-
-furnished by the instrument is that the defendant's enjoyment
.ie land is postponed to the death of her husband. The force
his circumstance may be overcome, as in *Wheeler* v. *Durant*
*Rich. Eq.*, 454), by the context and general form of the
:ument. The instrument under consideration begins with the
.l statutory words of a deed: "Know all men by these pres-
" and in all other respects has the form and requisites of a
deed.

; to the intent. It is the duty of the courts, by reasonable
.ruction, to give effect to the intention of the parties not
:sistent with law. The intent is to be ascertained from the
? instrument and the surrounding circumstances; the inten-
.hould be regarded as looking rather to the effect than the
of producing it. See *Chancellor* v. *Windham and Law*,
·h., 167. In the premises the grant is made in the past and
it tense: "Have granted, bargained, and at my death, by
presents, do grant, bargain, and release unto the said
)eth C. Watson all that tract," &c. In *Wheeler* v. *Durant*
·h. *Eq.*, 454), it is held that "a paper is a deed and not a
ent if the instrument is intended to have a present and not
·e operation, if it is intended to pass the right in present
, perfected and executed contract, and not revocable or
.tory." It was stated in argument and not denied that

defendant, prior to her marriage, lived upon the premises in dispute. Tillman Watson, Sr., had no children to succeed him in the possession of this homestead. It would be both reasonable and natural that he should desire his wife to have this homestead, after his death, in preference to his next of kin, who have shared with his wife in the distribution of the rest of his large and valuable real and personal property.

It is, however, contended that the words in the instrument, just before the signature of Tillman Watson, Sr., "This paper to be in full force until I desire to act," render the grant revocable, and thereby destroy the effect of the instrument as a deed. It is difficult to understand these words. The last of the words quoted is indistinct, being interpreted by plaintiffs to be "act," and by the defendant to be "alt." Interpreted in either view, the words quoted and appearing at the conclusion of the instrument, just before the signature of Tillman Watson, Sr., are repugnant to each and all of the foregoing parts of the paper, and cannot therefore control the operation or effect of the instrument. If these ambiguous concluding words could be held to reserve the power of revocation, there has been no effort on the part of Tillman Watson, Sr., during the six months that he lived after the execution of said instrument, to exercise such power of revocation.

It appears from the testimony that, after signing the instrument, Tillman Watson, Sr., folded the same and handed it to his wife, the defendant, saying something about the uses and purposes therein contained. I conclude, from the testimony, that the execution and delivery of the paper has been established. In delivering the opinion of the court, in the case of *Alexander* v. *Burnet* (5 *Rich.*, 195), Judge Evans says: "I have seen no case when the instrument was in form a deed, accompanied by delivery, which has been construed into a will, although a life estate was reserved to the donor."

I must conclude that it was the intention of Tillman Watson, Sr., at the time of the execution and delivery of the instrument on July 13, 1874, to convey, *in presenti*, to his wife, the defendant, the land in dispute, reserving to himself the use thereof during his life. There are no express words of reservation

of the use in the instrument under consideration. No such words are necessary when such intent can be discovered from the instrument and the surrounding circumstances. In *Chancellor v. Windham and Law, supra,* it is held "that a deed, whether in form a feoffment, a bargain and sale, or a lease and release, if the consideration of blood or marriage exists, may, to effect the intention of the parties, be construed to be a 'covenant' to stand seized to uses." The only consideration expressed in this instrument is the affection of a husband for his wife, which is sufficient consideration upon which to found a covenant to stand seized to uses. The case of *Chancellor v. Windham and Law, supra,* seems to me to be analogous to this case.

As matter of law, I conclude that the defendant, Elizabeth C. Watson, is entitled to the land described in plaintiffs' complaint, by virtue of the deed of Tillman Watson, Sr., executed and delivered July 13, 1874, *construed as a covenant to stand seized to uses.* It is therefore ordered and adjudged, that plaintiffs' complaint in the above entitled action be dismissed with costs.

From this decree the plaintiffs appealed upon several exceptions, which raised the points stated and considered by this court.

*Messrs. B. L. Abney* and *E. A. Glover,* for appellants.

*Mr. M. C. Butler,* contra, who also submitted argument of *Mr. B. W. Bettis,* deceased, on same side.

February 24, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Tillman Watson, Sr., late of Edgefield County, died intestate February, 1874. He died childless, but he left surviving him his widow, the defendant, and several collateral kindred, among whom are the plaintiffs. The widow administered and all of the real estate admitted to belong to the deceased has been partitioned among the parties entitled. The widow, however, is in the possession of the homestead, containing some four hundred acres, which she claims under a deed

executed by her husband in July, 1870, and which therefore was not embraced in the partition. The plaintiffs deny the validity of this deed as a conveyance of this property, and the action below was brought to recover one undivided half of the same. The defendant, in addition to relying on the deed, plead lapse of time and the statute of limitations. The action below was commenced in January, 1884.

The cause was heard by consent by his honor, Judge Witherspoon, upon testimony taken before the clerk of the court. His honor found as matter of fact that the deed in question had been executed and delivered, and as matter of law that it was a covenant to stand seized to uses. He therefore adjudged that the defendant was entitled to the land, whereupon he ordered the complaint to be dismissed with costs.

The appeal denies the execution and delivery of the deed; also, that it could be construed as a covenant to stand seized; and also, that defendant was entitled to hold the land under said deed. It also assigns error to the Circuit Judge in admitting certain testimony as to the acts, declarations, and intention of Tillman Watson concerning said deed. The following is a copy of the deed in question:

"STATE OF SOUTH CAROLINA—Edgefield County.

"Know all men by these presents that I, Tillman Watson, Sr., of Edgefield County, in the State aforesaid, in consideration of the affection I bear my wife, Elizabeth C. Watson, at and before the sealing of these presents, have granted, bargained, and at my death by these presents do grant, bargain, and release unto the said Elizabeth C. Watson all that tract or parcel of land known as my homestead, containing four hundred acres, more or less, situate, lying, and being in the County of Edgefield and State aforesaid, near Ridge Spring depot, on the Charlotte, Columbia and Augusta Railroad, being bounded as follows, viz.: On the north, by lands of P. J. Quattlebaum; on the east and south, by lands of Burrell Boatwright; and on the west, by the Charlotte, Columbia and Augusta Railroad and land of Mrs. T. Watson; together with all the kitchen and household furniture and effects, with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging or in anywise incident or appertaining. To have and to hold all and singular the premises before mentioned unto the said Elizabeth C. Watson, her heirs and assigns, forever. All of the before

mentioned property I give to my wife, Elizabeth C. Watson, independent of her dower, and no enumeration or deduction is to be made against her in consideration thereof in the final distribution of my estate; and I do bind myself, heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said Elizabeth C. Watson, her heirs and assigns, against my heirs and all and every other person lawfully claiming or to claim the same or any part thereof.

"Witness my hand and seal this thirteenth day of July, in the year of our Lord one thousand eight hundred and seventy, and in the ninety-fifth year of American independence. This paper to be in full force until I desire to act.

                    "TILLMAN WATSON, Sr. [L. S.]

"Signed, sealed, and delivered in the presence of
                    "P. J. Quattlebaum,
                    "R. P. Jones.

"State of South Carolina——Edgefield County.

"Personally appeared before me P. J. Quattlebaum, and made oath that he saw the within named Tillman Watson, Sr., sign, seal, and, as his act and deed, deliver the within deed, and that he, with R. P. Jones, witnessed the execution thereof.

                    "R. P. QUATTLEBAUM.

"Sworn to before me this 9th day of August, 1873.
                    "Jackson Covar, N. P.

"Recorded on the 15th day of December, 1875.
                    "Jesse Jones, C. C. C. P."

The questions involved in this appeal were very fully and elaborately discussed before us on both sides, and especially was much light thrown upon the intricate subject of conveyances, both at common law and under the statute of uses, many authorities having been cited and ably commented upon. The case, however, involves an examination of only one of the classes of conveyances discussed, to wit: covenants to stand seized, which originally only created a trust enforcible in equity, but afterwards by the statute of uses conveyed the legal title, and, therefore, since that statute recognized at law. The Circuit Judge held the deed in question here a covenant to stand seized, and whether he erred in thus holding is the main question to be considered. What is a covenant to stand seized, and what are its prominent features and characteristics?

Mr. Kent describes it as well and perhaps better than can be found elsewhere. No apology is therefore necessary for quoting

from him, even at some length. He says: "By this conveyance a person seized of lands covenants that he will stand seized of them to the use of another. On executing the covenant the other party becomes seized of the use of the land, according to the term of the use, and the statute of uses immediately operates and annexes the possession to the use. This conveyance has the same force and effect as a common deed of bargain and sale, but the great distinction between them is that the former can only be made use of among domestic relations, for it must be founded on the consideration of blood or marriage. No use can be founded for any purpose by this conveyance in favor of a person not within the influence of the domestic consideration; and it makes no difference whether the grantee, if he be a stranger to the consideration, is to take on his own account or as a mere trustee for some of the family connections. He is equally incompetent to take. The existence of another consideration in addition to that of blood or marriage will not impede the operation of the deed. Covenants to stand seized are a species of conveyance said no longer to be in use in England, as no use would vest in a stranger to whom the consideration of blood did not extend. They owe their efficacy to the statute of uses. \* \* \* But if the covenant to stand seized be founded on the requisite consideration, it would be good as a grant, for there would be no dispute about the intention, and it is admitted that in a covenant to stand seized any words will do that sufficiently indicate the intention. It is a principle of law that if the form of the conveyance be an inadequate mode of giving effect to the intention, according to the letter of the instrument, it is to be construed under the assumption of another character so as to give it effect. \* \* \* The qualification to this rule is, that the instrument must partake of the essential qualities of the deed assumed; and, therefore, no instrument can operate as a feoffment without livery, \* \* nor as a grant, unless the subject lies in grant; nor as a covenant to stand seized without the consideration of blood or marriage; nor as a bargain and sale without a valuable consideration. If there be no lease to make a deed good as a release, and no livery to make it good as a feoffment, it may operate as a bargain and sale; or, if a release cannot operate because it attempts to convey a

freehold *in futuro*, it will be available as a covenant to stand seized provided there be the requisite consideration." 4 *Kent*, 493–5.

It appears from this that the principal characteristics of a covenant to stand seized are, first, the intention; secondly, it must be founded upon the consideration of blood or marriage, and it may create a freehold *in futuro ;* and, further, though the form of the deed according to its letter may not be a covenant to stand seized, yet if such be the intention it will be so construed provided the consideration be that of blood or marriage. See also our cases of *Chancellor* v. *Windham and Law*, 1 *Rich.*, 164, and *Kinsler* v. *Clark*, 1 *Rich.*, 170, especially on the point of creating a freehold *in futuro* by covenants to stand seized. Now let the deed in question be tested by the principles laid down in the authorities cited. The consideration is of the character required in a covenant to stand seized, and there can be no doubt that Mr. Watson intended to create an estate in fee in his wife to take effect in enjoyment at his death, reserving a life estate to himself, thus creating a freehold as to enjoyment *in futuro*, one of the leading features of a covenant to stand seized.

The case of *Chancellor* v. *Windham, supra*, was very similar to the case here. In that case one John Wilson, by words *in presenti*, had given, granted, and released unto his son, his heirs and assigns, the land described in the deed, at his death to have and to hold, &c. It was held to be a covenant to stand seized, though creating a freehold *in futuro*. And so, too, in the case of *Kinsler* v. *Clark, supra*, where a mother, in consideration of natural love and affection, &c., gave and granted to her two sons after the term of her natural life a tract of land, the same holding was had. In the former case Judge Wardlaw said the authorities cited "show that a deed, whether in form a feoffment, a bargain and sale, or a lease and release, if the consideration of blood or marriage exists, may, to effect the intention of the parties, be construed to be a covenant to stand seized; that give and grant are apt words for such covenant, and that it is the duty of courts by reasonable construction to give effect to the intention of parties not inconsistent with law. The deed in question is, therefore, a good covenant to stand seized to uses."

Here apt words are used, the intention is apparent, and the exact consideration required is present; why, therefore, should we not sustain the Circuit Judge in his holding this paper a covenant to stand seized? It is urged that this should not be done, first, because in this deed personal property is embraced (household and kitchen furniture), which could not be made the subject of a covenant to stand seized; and, second, that the grantor reserved a power of revocation by the last words of the deed, "This paper to be in full force until I desire to act;" and it is contended that these two facts differentiate this case from the cases relied on above. It is true that the statute of uses does not apply to personalty, and it is also true that at common law, while a conveyance of a chattel might be made to commence *in futuro* at a definite time fixed, yet it could not be made after a life estate, because a life estate was supposed to be of longer duration than any chattel. This ancient common law rule, however, has been much modified since, and it cannot be said now that it has been established as an inflexible rule to be applied in all cases of personalty without regard to the circumstances. Be this as it may, however, we do not understand that the personalty here is really in contest. Whether it has been destroyed or whether it is in the possession of the defendant, does not appear.

The fact, though, that it appears in the deed as a portion of the property attempted to be conveyed, is made use of as an argument to show that the whole paper was ambulatory in its character, certainly so, as is contended, with reference to the personalty, because a future interest could not be created therein except by will, and inferentially so as to the land, because it is embraced in the same paper with the personalty. The land was far the most important and valuable portion of the conveyance. It was the homestead of these two old people, containing some 400 acres. If the small personalty found in the deed had not been embraced, we think there could be but little doubt as to the intention of the husband, and under the authorities cited above it would have been the duty of the court to declare the deed a covenant to stand seized, thereby creating a freehold *in futuro* in his widow. Such being the fact, is it not much more reasonable to suppose that the small personalty embraced was thrown in, either under the sup-

position that it would go with the land, or, perhaps, inadvertently, rather than to show that the deed was ambulatory, in the nature of a will, and was to have no effect except as a will? In these matters it must be observed that the intention must always control, and the intention must depend, not upon the effect of portions of the paper taken up in detached parts, but upon the whole paper, construed as a whole.

But, it is urged that the last line of the deed *supra* affords evidence that the deed was not regarded or intended by old Mr. Watson to be irrevocable. Without going into the question of powers reserved in such cases, it seems sufficient here to say that the line in question is too indefinite and vague to predicate any construction thereof. In the first place, it is not agreed as to the last word in the line, whether it is "act" or "alt." This is the most important word in the line, and in the absence of a distinct understanding of what it is, it cannot be safely interpreted. All of the foregoing portions of the deed are reasonably clear and free from doubt, and directly opposed to the effect contended for from this line. To overthrow the clear portions of the deed by a portion which is not distinctly intelligible, seems unreasonable. Besides, the only intelligible portion of the line shows that Mr. Watson knew that he had made a deed, which was of force at the time, at least, and that it passed a right *in presenti*.

The exceptions involving matters of fact are overruled under the authority of many familiar cases in our own reports. The case is a case at law, and the facts belong to the jury.

Next, it is urged "that his honor erred in not excluding all testimony as to Tillman Watson's acts, declarations, or intention concerning said deed, the deed itself being the highest evidence of intention." This is a very general exception, not sufficiently specific according to strict practice and rule, and if we have overlooked any testimony objected to, it is due to this fact. The testimony in the case seems to have been taken before the clerk under the provisions of the statute. During this examination, objections were made and noted, and it is stated by the appellant that these objections were urged at the trial. It does not appear, however, that the Circuit Judge made any ruling upon the subject. Nor does it clearly appear that he considered the testimony in question.

But in no event is the exception tenable. The principle contended for by the appellant, to be applied in the construction and interpretation of papers, is no doubt sound. They must speak for themselves, and through the words employed. Nothing can be added, taken away, or changed by oral testimony, but the paper as written must govern. Now, wherein did any testimony of Mrs. Quattlebaum or Abram Jones (the witnesses mentioned in appellant's argument) conflict with this rule? Neither testified as to any matter being left out that should be added to the deed, or that it should be altered in any respect. Nor did they disclose any act or declaration of Mr. Watson giving character to the deed, whether intended as a bargain and sale or a covenant to stand seized. These were the real questions in the case, and the Circuit Judge, doubtless, determined these upon the paper itself.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.